UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE NELSON, as Personal Representative
of the Estate of Jacqueline Nelson, and
GEORGES MICO NELSON,

        Plaintiffs,

v.

MILLERKNOLL, INC.,

        Defendant.
_____/

CASE NO. 1:23-CV-464

HON. ROBERT J. JONKER

## ORDER

### INTRODUCTION

This case is the battle of the bubble lamp, an iconic modern design created by George Nelson. Mr. Nelson's heirs allege that MillerKnoll orchestrated and executed a plan to cheat them out of intellectual property rights that should rightfully be theirs but that MillerKnoll misappropriated for itself. Plaintiffs sued in the Southern District of New York, and that Court transferred the matter here. The Second Amended Complaint, (ECF No. 64), is the operative one, and it includes claims for Fraud and Conspiracy to Commit Fraud (Counts I and II); Unjust Enrichment (Count III); Lanham Act and Common Law Trademark Infringement and Unfair Competition (Counts IV and V); and Cancellation of a Bubble Lamp Registration acquired by MillerKnoll (Count VI). MillerKnoll moves to dismiss. (ECF No. 87). The Court denies that Motion because Plaintiffs have stated *Twombly*-plausible claims and established at least a *prima facie* case of standing for the trademark claims. The Court's denial of the Motion to Dismiss is without prejudice to Defendant's ability to raise its arguments under FED. R. CIV. P. 56 on a fully developed record after plenary discovery, which is already underway.

## I. BACKGROUND

The Second Amended Complaint details a story of operatic scope and drama. According to Plaintiffs, the scheme started in 2005 when MillerKnoll tried without success to obtain the bubble lamp rights directly from Mr. Nelson's widow. When she refused a direct assignment, Plaintiffs say MillerKnoll strategically ingratiated itself with Mrs. Nelson by setting up the George Nelson Foundation with the nominal purpose of protecting and honoring Mr. Nelson's designs, but with the secret intent of diverting those intellectual property rights to MillerKnoll. Ultimately, MillerKnoll succeeded in persuading Mrs. Nelson to sign an Intellectual Property Assignment Agreement in 2013 that assigned the bubble lamp rights to the Foundation. Plaintiffs say Mrs. Nelson was 93 years old at the time and in a nursing home and without the competence to sign the agreement, but that none of that deterred MillerKnoll. With the bubble lamp intellectual property apparently in the Foundation's hands, Plaintiffs say MillerKnoll next initiated stalking horse litigation against an unrelated third party that culminated in an assignment of the bubble lamp rights from the Foundation to MillerKnoll. When Mr. Nelson's heirs discovered what had happened, they sued the lawyers who prepared the 2013 assignment. A settlement of that malpractice litigation purported to unwind the 2013 assignment *nunc pro tunc*, but by that time, the stalking horse litigation with the unrelated third party had already resulted in purported transfer of the bubble lamp rights to MillerKnoll. Hence this litigation.

## II. ANALYSIS

As already noted, the scope and drama of Plaintiffs' overall claim is operatic. That kind of claim naturally leads seasoned litigation players to raise a skeptical eyebrow or two. And ultimately the operatic story line will need evidence sufficient to permit a reasonable fact finder to find for Plaintiffs and against MillerKnoll. But at this stage of the case, the Court cannot conclude

that the allegations of the Second Amended Complaint fall short of a *Twombly*-plausible story, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007), or fail to articulate sufficient details to survive MillerKnoll's FED. R. CIV. P. 9(b) challenge to the counts asserting claims of fraud.  There is much to fill in, to be sure.  But the outlines of the claims are there in black and white and include some documentary corroboration, too.  There is also common-sense plausibility to the allegation that a person in her 90s who was confined to a nursing home lacked the capacity to understand and approve a complicated intellectual property assignment, especially after allegedly resisting proposed assignments for many years.  Can plaintiffs ultimately prove all this up, or even provide sufficient evidentiary support to survive FED. R. CIV. P. 56?  The Court does not know, but it is satisfied that the current allegations of the Second Amended Complaint are sufficient to move the case past Rule 9(b) and Rule 12 dismissal.

MillerKnoll raises separate Rule 12 defenses to some of the claims.  It contends that the state law claims are barred by the statute of limitations; that Plaintiffs lack standing to assert the trademark claims; that a quasi-contract theory cannot co-exist alongside written contracts; and that orders dismissing other prior Foundation litigation effectively bar this case against MillerKnoll. But in the Court's view, each of these possible defenses depend on too many fact-dependent determinations—as well as some open legal questions—for a Rule 12 dismissal.  The Court is not prepared at this time to definitively rule on what state law will control the state law claims and the applicable limitations periods.  In fact, it is not even clear to the Court that the same State's law will necessarily apply to each of the state law claims.  Whether Plaintiffs ultimately have standing for trademark claims will require resolution of both factual and legal issues regarding the 2013 assignment agreement and the later purportedly *nunc pro tunc* unwinding.  As for an unjust enrichment theory, it may well be that Plaintiffs will eventually have to choose between a theory

rooted in contract, or one rooted in quasi-contract, but nothing precludes Plaintiffs from keeping both options open at this early pleading stage of the case. And as for the impact of any prior dismissal of litigation involving the Foundation, Plaintiffs' allegation that MillerKnoll and the Foundation were alter egos for some purposes does not necessarily mean they were alter egos for all purposes, and Plaintiffs have not alleged they were alter egos for purposes of any prior dismissal orders. In short, this opera is still in its opening act, and there is a long ways to go before the final aria.

**ACCORDINGLY, IT IS ORDERED THAT** Defendant MillerKnoll's Motion to Dismiss, (ECF No. 87), is **DENIED**. This is, of course, without prejudice to the ability of Defendant to raise these issues again under FED. R. CIV. P. 56.

**IT IS SO ORDERED.**

Dated: February 5, 2024 /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE