# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ESTATE OF JACQUELINE NELSON, PATRICE NELSON, as Personal Representative of the Estate of Jacqueline Nelson, and GEORGES MICO NELSON | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION FOR ATTORNEY FEES** |
| Plaintiff, | Civil Action No. 1:23-CV-464 |
| v. | Hon. Robert J. Jonker |
| MILLERKNOLL, INC., formerly known as HERMAN MILLER, INC., | Mag. Judge Sally J. Berens |
| Defendant. | |

## SUMMARY OF REQUEST

This is an exceptional case. Plaintiffs sued MillerKnoll seeking more than $60 million for trademark infringement based on a factually and legally unsupportable 15-year conspiracy theory. The Court allowed Plaintiffs a full opportunity to develop support for their extraordinary accusations. They failed. In fact, Plaintiffs needed no discovery to learn the facts that defeated their claims. Those facts—that Plaintiffs themselves authorized and ratified MillerKnoll's alleged misconduct—have been undisputed and known to Plaintiffs since 2015, long before they filed this suit. Plaintiffs nonetheless aggressively availed themselves of discovery in the hope of finding something, anything, to sustain their claims.

A case is exceptional for purposes of awarding attorney fees under the Lanham Act if it "stands out" from other cases. And this case stands out. The Plaintiffs' case was patently weak. Plaintiffs attempted to mask its weakness with bluster and operatic accusations, hoping that the false allegation that a big company took advantage of their elderly mother would get them to a trial before a sympathetic jury. Accordingly, under Section 1117(a) of the Lanham Act, 15 U.S.C.

§ 1117(a), and the Supreme Court's definition of an "extraordinary case," MillerKnoll is entitled to recover the attorney fees it incurred to defend Plaintiffs' trademark claims.

MillerKnoll's fee request is limited. Four of Plaintiffs' six claims were express trademark claims (Count IV (Lanham Act trademark infringement), Count V (common law trademark infringement), and Count VI (trademark cancellation)) or were based on trademark infringement (Count III (unjust enrichment)). Moreover, at one point, Plaintiffs sought damages of more than $60 million, though Plaintiffs' expert ultimately felt compelled to reduce the number to roughly $35 million. Regardless of which number is used, the vast majority—somewhere between 93% and 97% of Plaintiffs claimed damages—were based on Plaintiffs' allegations of trademark infringement, and only a small fraction—less than $2 million—were based on non-trademark claims.

To be clear, MillerKnoll's request is seeking less than 10% of its attorney fees, not including substantial non-recoverable litigation costs, including, for example, the cost to retain multiple expert witnesses to respond to Plaintiffs' experts.[1] MillerKnoll could reasonably seek recovery of all of its attorney fees; however, MillerKnoll is seeking an award of only $172,220.50. This total includes only attorney fees specific to the defense of Plaintiffs' express trademark claims (Counts IV, V, and VI), despite the fact that all of the claims and underlying facts were interrelated. This sum easily qualifies as reasonable to defend against a trademark claim seeking tens of millions of dollars pursued for years by aggressive Plaintiffs.

---

[1] MillerKnoll intends to file a Bill of Cost to recover permitted costs within the time permitted by Local Rule 54.1.

**LEGAL STANDARD**

Section 1117(a) of the Lanham act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Supreme Court held that the same language in the Patent Act means that an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Supreme Court explained that district courts "may determine whether a case is 'exceptional' in a case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. The Sixth Circuit has confirmed that the same test applies under the Lanham Act. *See, e.g., La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 613-14 (6th Cir. 2023); *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478 (6th Cir. 2022). Under Sixth Circuit precedent, a case may be exceptional if the case was unusually weak or if a party pursued costly discovery to try to force a settlement, despite having a weak case on the merits. *La Bamba Licensing, LLC*, 75 F.4th at 613-14; *Max Rack, Inc.,* 40 F.4th at 478.

**ARGUMENT**

I.      **This Case is Exceptional.**

Plaintiffs' claims were exceptionally weak from the beginning, and Plaintiffs must have known it. The facts that doomed Plaintiffs claims were known to them even before they filed this suit and without the need for discovery—*e.g.*, the 2006 Royalty Agreement, the 2015 Addendum, Mico Nelson's emails confirming he "clearly" understood the Modernica settlement, and the Plaintiffs' acceptance of millions of dollars in royalties for the sale of Bubble Lamps before *and after* filing this suit in 2021. Plaintiffs offered no admissible evidence to contradict any of these

facts, arguing instead that Mico Nelson—who himself acknowledged in writing that his attorney's explanation of the 2015 agreement was "very clear" (ECF No. 281, PageID.5009)—simply did not understand the impact of Plaintiffs' conduct. Plaintiffs nonetheless persisted, attempting to distract from the weakness of their case by telling the tale of a nonsensical 15-year conspiracy.

Another fact that makes this case stand out: This was Plaintiffs' second bite at the apple. Not only were Plaintiffs personally involved in and fully aware of the events that doomed their claim, Plaintiffs also already had taken discovery on these same issues in the Illinois case, which involved the same underlying facts. That included discovery from MillerKnoll as a third party by subpoena. Plaintiffs had explored these same facts and evaluated their legal significance before filing this suit while trying to prove a claim against MillerKnoll's alleged "alter ego," the George Nelson Foundation ("GNF"). There too, they came up empty against GNF, dismissing their claims with prejudice for no money, accepting only the unwinding of the Intellectual Property Assignment Agreement between Jacqueline Nelson and GNF ("IPAA")—something GNF had offered them years before. Undeterred, they tried again here, focusing on MillerKnoll.

Standing alone, the weakness of Plaintiffs' claims makes this case exceptional. But this case also stands out in light of the aggressive nature in which Plaintiffs litigated this case despite its weakness. Here are examples:

- Plaintiffs ignored the forum selection clause calling for venue in Michigan and filed the case in the Southern District of New York. MillerKnoll had to move to transfer the case to the Western District of Michigan. (*See* ECF Nos. 65, 72-73).

- Plaintiffs sought far-reaching discovery, pursuing a motion to compel the production of vast amounts of detailed financial information about MillerKnoll as well as privileged communications. When the Magistrate Judge largely denied the

request, Plaintiffs objected to the recommendation, which confirmed the Magistrate Judge's ruling.  MillerKnoll was obligated to respond to both the initial motion and the objections. (*See* ECF Nos. 170, 177, 186, 199, 202, 204, 207).

- At the same time, Plaintiffs themselves failed to turn over basic information, much of which their experts purportedly relied on. Defendants were forced to move to compel. (ECF No. 111-112, 117, 121, 124).

- Then Plaintiffs sought to harass MillerKnoll by subpoenaing its current CEO for a deposition, though she did not even work at MillerKnoll when the underlying events occurred.  MillerKnoll again had to seek relief from the Court. It filed a motion for protective order, which was granted.  (ECF No. 181-182, 198, 214).

- Plaintiffs again unnecessarily increased the cost of the litigation by pursuing purported trial depositions of MillerKnoll's former CEO – whom Plaintiffs had already deposed on all issues and whose deposition could have been used at trial were he unavailable – and of a MillerKnoll Senior Vice President who did not work for MillerKnoll at the time of the events at issue, has no unique relevant knowledge, Plaintiffs opted not to depose during discovery, and for whom there is no indication that she would not be available at trial. MillerKnoll was forced to respond to this frivolous motion as well.  (ECF No. 276, 278).

The weakness of Plaintiffs' claims on the merits makes it exceptional without anything more. *See RJ Control Consultants, Inc. v. Multiject, LLC*, No. 16-10728, 2024 WL 166000, at *5 (E.D. Mich. Jan. 16, 2024) (awarding prevailing defendant attorney fees because summary judgment was granted on a Lanham Act claim that "was wholly without merit" and because plaintiffs repeatedly advanced "a plainly hollow legal theory . . . to sustain their claims"). When

combined with Plaintiffs' aggressive approach to the litigation, including efforts to delve into MillerKnoll's sensitive financial and privileged information and to harass its CEO, this case plainly stands apart from others, and MillerKnoll should be awarded its attorney fees.

## II.    The Requested Fees Are Reasonable.

MillerKnoll would be justified in seeking an award of all of its attorney fees incurred over the past four years of litigation in multiple forums. All of Plaintiffs' claims were interconnected. The trademark claims could not be defended without the work done to defend against the non-trademark claims. And in the end, the same facts and legal principles doomed all of Plaintiffs' claims, confirming their interconnected nature. Moreover, nearly all of the damages Plaintiffs sought were based on a theory of recovery tied to the trademark claims (disgorgement of MillerKnoll's profits).

MillerKnoll nonetheless has excised from its request any fees that were not specifically related to defending against the express trademark claims, reducing the total request to $172,220.50—less than 10% of MillerKnoll's total fees. As set forth in the attached Declaration, more than half of the fees sought relate to the work of attorney Josh Frick, a trademark attorney whose only focus was defending the trademark claims. *See* Declaration of Mark Durbin, attached as **Exhibit 1**.  The remainder is spread across several other attorneys, further described in Exhibit 1, but again is limited to only their work specifically on the trademark claims. As further set forth in the attached declaration, the fees and the rates of counsel are customary and ordinary in a trademark case of this magnitude.

**CONCLUSION**

WHEREFORE, Defendant respectfully requests the Court enter an order awarding Defendants the amount of $172,220.50, or such other amount as the Court deems appropriate, pursuant to 15 U.S.C. § 1117(a).

Dated: October 13, 2025

Respectfully submitted,

*/s/ Mark L. Durbin*
Mark L. Durbin
Megan K. Krivoshey
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313
mkrivoshey@btlaw.com
mdurbin@btlaw.com

Anthony C. Sallah
171 Monroe Avenue NW, Suite 1000
Grand Rapids, MI 49503
Tel: (616) 742-3976
asallah@btlaw.com

Charles P. Edwards
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7438
cedwards@btlaw.com

*Attorneys for Defendant MillerKnoll, Inc., f/k/a Herman Miller, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, I electronically filed the foregoing document with

the Clerk of Court using the ECF system which provides notice to all attorneys of record.

/s/ Mark L. Durbin
Mark L. Durbin