IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PATRICE NELSON as Personal Representative of the Estate of Jacqueline Nelson and GEORGES MICO NELSON, Individually | ) ) ) ) |
| Plaintiffs, | ) Civil No. 1:23-cv-00464 ) ) Hon. Robert J. Jonker ) |
| ) | ) Magistrate Judge Sally J. Berens |
| MILLERKNOLL, INC., | ) ) |
| Defendant. | ) |

## RESPONSE TO MOTION FOR FEES

Nothing about this case sets it apart from any average but hard-fought litigation. Defendant's brief exaggerates the supposed weakness of Plaintiffs' case and Plaintiffs' conduct in discovery, but it is nothing more than dramatic prose. This case simply cannot be considered an exceptional one. The Court denied Defendant's motion to dismiss, and both parties engaged in both successful and unsuccessful discovery motions. And even if this case were an "exceptional" one, which it is not, Defendant's purportedly altruistic request of "limited" fees still extends well beyond what the law permits.

## STANDARD

### I.    Exceptional Cases Are Rare and Litigated in Bad Faith

While a court may award attorney's fees under § 1117(a) after a holistic consideration of a case, fees are "awarded to prevailing defendants *only in rare circumstances*." *Bliss Collection, LLC v. Latham Companies*, LLC, 82 F.4th 499, 516 (6th Cir. 2023) (emphasis added) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554–55 (2014)). In this regard, "[a] prevailing defendant is not entitled to attorney's fees under § 1117(a) simply because the

plaintiff's claims were unsuccessful." *Id.* Rather, the case must be "exceptional," meaning that it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.

The Sixth Circuit has noted that courts should consider the totality of the circumstances when determining whether a case is "exceptional," but it has emphasized that an exceptional case is one that features claims that are "exceptionally meritless" or "brought in bad faith." *Bliss Collection*, 82 F.4th at 516 (citing *Octane Fitness*, 572 U.S. at 555).

## II.    <u>**Movant Bears the Burden to Prove a Reasonable Fee**</u>

Determination of reasonable attorney's fees begins with the calculation of the so-called "lodestar"—the product of "a reasonable hourly rate" and the "number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After determining the lodestar, the court may modify the fee award to take into account other factors including, among others, the results obtained. *Id.* at 434. If the parties are unable to agree upon the amount of a fee, "*the fee applicant bears the burden* of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* (emphasis added). The fee should be one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citation omitted).

## ARGUMENT

### I.    This Case Is Not Exceptional

"Where a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate under § 1117(a)." *See Bliss Collection*, 82 F.4th at 516 (cleaned up) (finding that no award was justified despite the dismissal of the plaintiff's trade dress claim on a motion to dismiss for a failure to state a claim); *see also Nat'l Presto Indus., Inc. v. U.S. Merchants Fin. Grp., Inc.*, No. 18-CV-3321 (SRN/LIB), 2023 WL 7986605, at *12 (D. Minn. Nov. 17, 2023) ("The Court found sufficient evidence of a fact issue for Count I to survive summary judgment, and although it dismissed the other Lanham Act counts at summary judgment, such a dismissal does not render the claims objectively unreasonable."). The Court here agreed that Plaintiffs stated a plausible claim, and it found that the allegations were sufficient to move the case past even the heightened pleading standard of Rule 9(b). (ECF No. 110, PageID.267.) Defendant, therefore, is not entitled to fees just because it was ultimately successful. *See Bliss Collection*, 82 F.4th at 516 (quoting *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, 573 F. App'x 547, 558 (6th Cir. 2014)) ("If a defendant could obtain attorney's fees every time that it successfully defended a federal trademark or trade dress infringement claim, 'awards would be commonplace rather than exceptional.'").

### A.  The Court's Denial of Defendant's Motion to Dismiss Shows Plaintiff's Claims Were Clearly Not Meritless or Brought In Bad Faith

The Sixth Circuit recently suggested that a defendant is barred from recovering fees where a plaintiff successfully states a claim on a motion to dismiss. In *Bliss Collection*, the Sixth Circuit reversed the dismissal of a plaintiff's trademark infringement claims but affirmed the dismissal of the trade dress infringement claims. 82 F.4th at 516. In denying the defendant attorney's fees for the trademark infringement claim, the Sixth Circuit agreed with the district court's determination

3

that the infringement claims were neither exceptionally meritless nor filed in bad faith, and it explained, "[t]here is, of course, ***no basis for an award of attorney's fees for a claim that we have determined should proceed in the district court.***" *See id.* (emphasis added).

Here, Defendant posits that Plaintiffs' claims were "exceptionally weak from the beginning." (ECF No. 285, PageID.5114.) Not so. Defendant—from the beginning—had an opportunity to demonstrate to this Court that Plaintiffs' claims were "exceptionally weak" when it filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6). (ECF Nos. 87–88.) The crux of Defendant's motion was that "Plaintiffs have been given multiple opportunities to attempt to assert viable claims against HMI and have failed to do so." (ECF No. 88, PageID. 43.) Yet, the Court denied Defendant's motion to dismiss, holding that Plaintiffs had stated viable claims and had standing to bring them. (ECF No. 110, PageID. 265.) Indeed, Defendant, in the present motion, tries to embellish the circumstances and accuse Plaintiffs of making a "false allegation that a big company took advantage of their elderly mother" and that such an allegation could get them "before a sympathetic jury." (ECF No. 285, PageID.5112.) But Defendant's theatrics cannot change the fact that this Court plainly held that there is "common-sense plausibility to the allegation that a person in her 90s who was confined to a nursing home lacked the capacity to understand and approve a complicated intellectual property assignment, especially after allegedly resisting proposed assignments for many years." (ECF No. 110.)

Defendant thus cannot now retroactively claim victory on this case "from the beginning" by arguing that Plaintiffs' case was weak from the outset. *See N. Star Tech. Int'l Ltd. v. Latham Pool Prods., Inc.*, No. 3:19-CV-120-KAC-DCP, 2024 WL 4328835, at *7 (E.D. Tenn. Jan. 11, 2024) ("In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive strength of the

party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position.").

### B. Defendant Argued Against Modernica's Rights Before Plaintiff Did

Plaintiffs' trademark claims relating to the Bubble Lamp Design Marks is the assertion that Defendant has no rights in those designs because the "rights" and registrations Defendants purportedly own were acquired from Modernica, who fraudulently misappropriated and registered them. This is a position Defendant itself, through its puppet GNF, asserted loudly and clearly in its complaint against Modernica in the Modernica action. Ex 1, ¶¶21, 67. Defendant has now taken an about-face on that position and seeks its attorneys fees for defending against its own prior position, calling it "exceptional."

### C. Mico Nelson's Subjective Knowledge Is a More Nuanced Issue Than Defendants Acknowledge

Again, whether or not the Court found an issue sufficient to justify summary judgment is a different question entirely to whether it was an unreasonable position for Plaintiff to take. Defendant relies on the theory that Plaintiffs must have known their claims were doomed because Mico Nelson allegedly understood the Modernica settlement or otherwise ratified Defendant's ownership of the Bubble Lamps. (ECF No. 285, PageID.5115.) But this position misses crucial points—many of which will be the subject of appeal. Mico Nelson did not fully comprehend the 2015 Addendum or the 2006 Royalty Agreement. The terms of the Addendum themselves are confusing, purporting, if Defendant's interpretation is correct, to pay Mico royalties for the "licensed" products that Defendants own. Because ownership is inconsistent with a duty to pay royalties, Mico was fully justified in believing he was negotiating rights to sell the products in question.

On closer inspection, further, the Addendum is not a license for the Nelson Designs at all, the implications of which the Court failed to consider. In fact, the Addendum was only a license for the NELSON and GEORGE NELSON marks, which Mico testified that he did not appreciate. The only clue in the Addendum of this fact lies in Defendants' use of one word ("branded") craftily positioned in Exhibit B, versus the main contract. Mico surely cannot be expected to have understood the legal meaning of that one word. Finally, Mico could not been expected to understand that he had no standing to sign the Addendum at all. As the court found and as Defendants do not dispute, Jacqueline had been made to assign away *all* of her rights to GNF in 2012. Plaintiffs did not possess rights to any designs, nor did they possess rights to the marks. Defendants knew this, yet Defendants let Mico think that he had standing to execute the Addendum when he did not. Therefore, in Plaintiff's view, the Addendum was just one more ruse on the family. This is supported by GNF's acknowledgment, (SJ Resp. Exh 101, at 6),[1] which was unconventional at best. GNF, who was a necessary party to the Addendum, only approved the category of products dealing with the Lamps. It did not approve the category related to furniture, rendering the Addendum largely invalid because there is no contract as to the furniture category. The interplay between the Royalty Agreement and the Addendum was thus a machination created by Herman Miller. Mico could not have understood that the Addendum was an invalid contract from the very beginning, nor could Mico have understood that Defendants organized at the outset. These facts, as well as Defendant's intention to unbrand the Nelson Designs, gave cause for Plaintiffs to bring suit to challenge the overall transaction in 2015. For at least these reasons, Plaintiffs' claims are far from meritless as alleged by Defendant.

---

[1] This exhibit was filed under seal.

Mico's testimony suggested that that he thought title to the Bubble Lamps were ultimately going to be transferred from Modernica to GNF. (ECF No. 233-33, PageID.3501.) His belief was justified. The evidence shows Defendant's overt conduct after the settlement in 2015 was focused on promoting the notion that it had a license from GNF to manufacture and sell the Bubble Lamp product. (ECF No. 233-51, PageID.3716.) Another aim was to deflect attention away from the details of the settlements, particularly the fact that Defendants, plaintiffs in the action against Modernica on the Eames designs finagled the transfer of the Bubble Lamp product to itself. In an email dated January 7, 2016, between Defendant and Modernica executives, for instance, Defendant specifically discouraged discussion about the Eames and Modernica lawsuits, instructing that, if either party was asked about the lawsuits, they would say, "[t]he George Nelson Foundation and Modernica, and separately, Herman Miller and Modernica, have resolved their respective disputes to the satisfaction of all involved. *This is the only statement that will be issued regarding the agreements, and no additional details will be disclosed by any party.*" (ECF No. 246-3, PageID.3845.) There are many other deceptive advisories and press releases issued by Defendants in the immediate period post settlement.

In light of Defendant's obfuscation of the details of both settlements, which Defendant negotiated in isolation and which it entirely controlled and in light of Defendant's payment of all expenses related to the Modernica action, (*See* ECF No. 246-15; ECF No. 246-14; ECF No. 246-21; ECF No. 233-24), Mico was justified in believing that Defendant would front the money to purchase the Bubble Lamps for GNF. Defendant was not paying without a catch. Mico understood Plaintiffs would be required to fully reimburse Defendant's legal fees related to the Modernica suit (which exceeded $800,000). He also thought Defendant would receive an exclusive license from GNF to sell the lucrative Bubble Lamp product. (*See* ECF No. 233-33.) Mico would not have

agreed to pay over $800,000 for a lawsuit that was about the Bubble Lamp in order to give it to Defendants and receive royalties only if the lamps were branded. Any other conclusion would defy reason. Plaintiffs learned, in the malpractice suit, that Brian Walker *intended to unbrand*, which would have left Plaintiffs destitute. (PLTFMI108060.)[2] Concluding that Plaintiff's case is "exceptionally meritless" or "brought in bad faith" is thus impossible, especially where the Court denied Defendant's motion to dismiss on these same issues. *Bliss Collection*, 82 F.4th at 516.

### D. **Plaintiffs Did Not Litigate This Action Unreasonably**

Nothing about the way this case was litigated stands out from other cases. Merely characterizing certain tactics or conduct in discovery as "aggressive" does not move the needle, nor does baselessly characterizing a subpoena as "harassment" warrant an award of fees. *SafeRack, LLC v. Bullard Co.*, No. 2:17-CV-1613-RMG, 2019 WL 447316, at *2 (D.S.C. Feb. 5, 2019) ("conduct triggering relief [for fees under 1117(a)] must go beyond an aggressive litigation strategy." (cleaned up)).[3]

Regarding Plaintiffs' decision to initially file this case in the Southern District of New York, Plaintiffs filed there because this is precisely the jurisdiction in which GNF filed suit against Modernica; that action was significant to the case at bar, making it entirely reasonable to file there.

As evidence of unreasonable or aggressive litigation tactics, Defendant points to standard conduct that occurs in every run-of-the-mill litigation that survives a motion to dismiss. For example, Defendant complains that Plaintiffs moved to compel production of financial information and for unredacted communications which Plaintiffs argued in good faith were no longer

---

[2] This document is marked as Confidential.

[3] For one thing, discovery in a fraud case is naturally more extensive. Fraud is difficult to prove and is highly fact intensive. *Cf. BB&S Props., Inc. v. Inv. Prop. Assocs.*, No. 1:90-CV-541, 1991 WL 239961, at *3 (W.D. Mich. Sept. 13, 1991) ("By reason of its very nature, it is usually very difficult to prove fraud by direct evidence and such proof is not required.").

privileged. (ECF No. 285, PageID.5115-5116.) But Defendant's brief gives the false impression that Plaintiffs' requests were wholesale denied; this motion was granted in part and denied in part. Indeed, Magistrate Judge Berens agreed with Plaintiffs as to some of the requests for production. (ECF No. 189, PageID.1340–42.) There were good faith reasons to bring this motion as well, particularly where Defendant refused to produce documents beyond August 2017 despite Plaintiffs knowing that relevant documents existed beginning in late 2017. (ECF No. 189, PageID.1322-23.) And the issue of whether Defendant's redactions for privilege were proper was decided based on Defendant's counsel's representations that they carefully decided what communications made between Tim Lopez and Ben Watson were made in Watson's capacity as an HMI employee and not as a GNF Board member, despite the fact that Watson himself testified that he "wore two hats" which would have destroyed any attorney client privilege. (ECF No. 189, PageID.1346.) Filing an objection to the findings of Judge Berens, which Plaintiffs were permitted to do preserved the rights and interests of Plaintiffs—there is nothing unreasonable about doing so. *See* W.D. Mich. LR 72.

Defendant also brought a motion to compel in this action (ECF No. 111) that was granted *and denied* in part. And before the hearing on the motion to compel, the parties collaborated to resolve several issues that would have been submitted to the Court. (ECF No. 122.) Plaintiffs did not refuse to work with Defendant on resolving these issues, and the Court did not ultimately wholesale grant Defendant's motion to compel on the remaining issues. Nor was it the case that Plaintiffs were admonished by the Court for the issues surrounding this motion to compel. Plaintiffs very well could argue that the issues Defendant brought to the Court's attention were "frivolous" or "aggressive," but, like Plaintiffs' conduct, nothing about such a potential dispute would be out of the ordinary.

The motion before the Court also attempts to cast Plaintiffs in a false light, claiming Plaintiffs "harassed" Defendant's CEO. (ECF No. 285, PageID.5116.) Defendant does not expand on how the receipt of a deposition notice by Defendant's counsel naming its CEO, Andi Owen, "harassed" Owen or Defendant. Plaintiff did not make its deposition notice public and did not serve it directly on Owen, who is the head of a large company often involved in litigation. Moreover, Plaintiffs had good faith, reasonable explanations for seeking to depose Owen. She directly replaced Brian Walker[4] when he abruptly "retired" from HMI and she was involved in, or at least present for, Tim Lopez's involuntary departure from HMI.[5] Plaintiffs asserted that both instances were related to the allegations in the SAC. Plaintiffs deposed both Mr. Walker and Mr. Lopez on their departures, each of whom held positions in the higher echelons of Herman Miller. It was entirely reasonable for Plaintiffs to also seek discovery from Owens on behalf of HMI and its' version of the facts.

Defendant's vague assertions that Plaintiffs "unnecessarily increased costs" or otherwise acted unreasonably during discovery simply do not meet the burden of establishing this case as "exceptional." Courts distinguish between standard, zealous (and even "aggressive") advocacy during discovery and truly "exceptional" cases. *See, e.g.*, *LHO Chicago River, L.L.C. v. Rosemoor*

---

[4] It was Brian Walker who, starting in 2005, masterminded the creation of GNF, the facilitated transfer of the Nelson IP to GNF (knowing, as a trained CPA, it would jeopardize Plaintiffs' sole source of income and violated the tax laws for Jacqueline to continue to receive royalties while GNF held the intellectual property), and handled the entire Bubble Lamp heist. The Court did not discuss the import and seriousness of the tax violations, which will be discussed in Plaintiffs appeal and which should in and of itself demonstrate that Plaintiffs' claims cannot be seen as frivolous. Indeed, Plaintiffs presented evidence that the very act of Defendant, as creator and main contributor to GNF, obtaining rights to, and holding, the Bubble Lamp interest in the settlement of the Modernica action was inconsistent with federal tax laws. (Expert Elinor Report).)  The tax problems also necessitated the lawsuit to unravel the IPAA and this lawsuit to regain possession of the Bubble Lamp interest because, contrary to the Court's finding that Plaintiffs are sitting on a "Golden Goose", the tax problems are a ticking time bomb that jeopardizes Plaintiffs' sole source of income. Until it is rectified, the tax problems expose Plaintiffs to the potential that the federal government will seize the Nelson IP and demand disgorgement of all benefits therefrom. (ECF No. 233-25; ECF No. 233-26; ECF No. 233-27 (Ramey reports and testimony).

[5]  Lopez, as general counsel of Defendant, was Walkers' instrument in the Bubble Lamp transfer. Both men left Defendant company at the same time and liquidated all of their equity holdings in Defendant Company.

*Suites, LLC*, 988 F.3d 962, 970 (7th Cir. 2021) (plaintiff's actions "were certainly bad" but not so "egregious and reprehensible to make the case 'stand out' from others and merit fee-shifting"); *Avco Corp. v. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 511 (M.D. Pa. 2023), *aff'd*, No. 23-1609, 2024 WL 3439771 (3d Cir. July 17, 2024) (case was "contentious" and that "both parties were at times successful and at times unsuccessful in their requests and disputes," but refusing to conclude that the "method of litigating this matter was so unreasonable that attorneys' fees are warranted"); *Presto Indus.,* 2023 WL 7986605, at *12 ("***some aggressive and unnecessary litigation tactics*** ... [but not] an 'exceptional case'"); *Exclaim Mktg., LLC v. DirecTV, LLC*, No. 5:11-CV-684-FL, 2015 WL 5725703, at *8 (E.D.N.C. Sept. 30, 2015) ("some questionable discovery conduct on the part of Exclaim," [but] "there is no evidence that the case as a whole was litigated unreasonably"). This case is equivalent.

Defendant also criticizes Plaintiffs' position in this action throughout various stages of the case. Yet, Defendant's hands are unclean when it comes to advocacy of weak or meritless positions. Indeed, in Defendant's motion to dismiss, Defendant argued that New York law applied to this action. (ECF No. 88, PageID.51.)[6] But the body of law relied on by Defendant was wholly inapplicable. As discussed in Plaintiffs' brief in response, "the Supreme Court rejected the rule that the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties." (ECF No. 92, PageID.175.) Thus, Defendant itself has taken unreasonable positions in this case.

## II. In The Event the Court Finds This Case Is Exceptional, Defendant Has Not Justified Its Requested Fee Calculation

### A. Defendant Can Recover For Only Claims Brought Under the Lanham Act

---

[6] Indeed, Defendant initially pursued and later dropped, both in this Court and in New York, a theory that Plaintiffs' claims were barred by the Statute of Limitations because inter alia, the summons in New York was issued several days after the Complaint was filed. (ECF No. 88, PageID.55–56.)

11

Defendant's request for fees is unreasonable per se because it has failed to apportion the fees to account for only the claims brought and recoverable under the Lanham Act. The Sixth Circuit has made clear that fees under 15 U.S.C. § 1117(a) "are recoverable only for work performed in connection with claims filed under the Lanham Act." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). Requested fees therefore must be "apportioned between the Lanham Act and other claims." *See id.* (finding that in a case where the plaintiff brought Lanham Act claims and common law claims for conversion, trademark infringement, unfair competition, and other Michigan claims, the district court erred in awarding *all* of the attorney's fees).

Here, Defendant's request includes *four claims*; however, only one claim—Count IV for trademark infringement under 15 U.S.C. § 1125(a)—is recoverable under the Lanham Act. The remaining claims are not eligible for recovery, and thus, at most, Defendant can recover $43,055, making up one-fourth of its requested fees. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219 (10th Cir. 2000) (finding that a 20% reduction in attorney's fees for time spent on non-Lanham Act claims was sufficient in awarding attorney's fees for trademark infringement action where trademark infringement under the Lanham Act was the central claim).

### B. Defendant Has Not Met Its Burden To Provide a Lodestar Calculation of a <u>Reasonable Fee</u>

It is Defendant's burden to demonstrate that its requested rate and number of hours are reasonable under the "lodestar" method. The Sixth Circuit has adopted the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *superseded by statute on other grounds*, for consideration in calculating reasonable attorney's fees. *Paschal v. Flagstar Bank*, 297 F.3d 431 (6th Cir. 2002). The Court need not consider all of these factors, and not all of these factors are relevant to each case. *Hensley*, 461 U.S. at 434, n.9. Defendant attached

its attorneys' bios to its motion and recounted the *actual* fees charged by them, but has not even attempted to apply the lodestar factors to demonstrate that its fee request is *reasonable*. This may be because its requested rates are exorbitantly high in the context of this case.

By far, largest percentage of time for which Defendant requests reimbursement was incurred by Attorney Frick, who is based in Chicago—not in West Michigan. He has practiced for 18 years and holds an Of Counsel status. Neither the Durbin Declaration in Defendant's Exhibit A nor Mr. Frick's professional bio in Exhibit B provides any information to substantiate his expertise other than a bare-bones recitation of his practice area and education. Therefore, Defendant has not met its burden to justify an award of anything more than a median hourly rate for Mr. Frick's time. The "average rate" Defendant requested for him is $557.08. But the most recent edition of the American Intellectual Property Law Association's national survey of IP practitioners' rates found that the national median rate for Of Counsel attorneys with 15-24 years of experience is $362.[7] Defendant should not be awarded any more than this rate for Mr. Frick's time.

Defendant seeks a similarly inflated rate for the other attorneys listed in light of the sparse justification for them proffered in Defendant's motion. The chart below summarizes:

| Attorney | Position | Experience | Requested Rate | Median Rate |
| --- | --- | --- | --- | --- |
| Mark Durbin | Partner | 32 | $843.54 | |
| Charles Edwards | Partner | 32 | $719.43 | $525 (equity partner) |
| Megan Krivoshey | Partner | 9 | $619.43 | $418 (partner track)[8] |
| Anthony Sallah | Partner | 11 | $475.00 | $515 (partner track)[9] |

[7] Ex 2 at 37 (I-60,Q33).
[8] Ex 2 at 32 (I-47,Q33).
[9] *Id*.

Applying these median rates to Defendant's requested number of hours produces the following totals:

| Attorney | Median Rate | Hours | Total |
|---|---|---|---|
| Mark Durbin | $525 | 55.4 | $29,085 |
| Charles Edwards | $525 | 23 | $12,075 |
| Megan Krivoshey | $418 | 14.1 | $5,893.80 |
| Anthony Sallah | $515 | 4.2 | $2,163 |
| Joshua Frick | $362 | 176.3 | $63,820.60 |
| | | | $113,037.40 |

Therefore, at the very least, and irrespective of all other arguments in mitigation of Defendants' entitlement to fees, the very most Defendants should be entitled to is no more than $113037.40.

**CONCLUSION**

This case is by no means one of the "rare" exceptional trademark infringement cases under the Lanham Act. *Bliss Collection*, 82 F.4th at 516. It is neither "exceptionally meritless" or "brought in bad faith." *See id.* Thus, for the foregoing reasons, Plaintiffs request that the Court find that the case is not exceptional., but in the event the Court determines the case is exceptional, Plaintiffs respectfully request that Defendant recover only a fourth of the sought fees.

Dated: October 27, 2025                                    Respectfully Submitted,

**WARNER NORCROSS + JUDD LLP**

By: */s/ Brian D. Wassom*
Brian D. Wassom (P60381)
12900 Hall Rd., Ste. 200
Sterling Heights, MI 48313
(586) 303-4139
bwassom@wnj.com

**ROYER COOPER COHEN BRAUNFELD, LLC**

By: */s/ Donna A. Tobin*
Donna A. Tobin
Julie M. Latsko
Kira N. Lum
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
(212) 994-0454
dtobin@rccblaw.com
jlatsko@rccblaw.com
klum@rccblaw.com

NORMAN, HANSON & DETROY, LLC
Doris V. Rygalski,
Two Canal Plaza
P.O. Box 4600
Portland, ME 04112-4600
(207) 553-4704
drygalski@nhdlaw.com

*Attorneys for Plaintiffs*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2025, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system, which will cause notice of same to be delivered to all counsel of record.

<i>/s/Brian D. Wassom</i>