**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  July 07, 2026

Mr. Mark L. Durbin
Barnes & Thornburg
1 N. Wacker Drive
Suite 4400
Chicago, IL 60606

Mr. Gaetan E. Gerville-Reache
Warner, Norcross & Judd
150 Ottawa Avenue, N.W.
Suite 1500
Grand Rapids, MI 49503

Ms. Megan Kay Krivoshey
Barnes & Thornburg
1600 West End Avenue
Suite 800
Nashville, TN 37203-3447

Ms. Doris Rygalski
Norman, Hanson & DeTroy
P.O. Box 4600
Portland, ME 04112

Mr. Anthony C. Sallah
Barnes & Thornburg
171 Monroe Avenue, N.W.
Suite 1000
Grand Rapids, MI 49503

Ms. Donna Tobin
Royer Cooper Cohen Braunfeld
1120 Avenue of the Americas, 4th Floor
New York, NY 10036

Mr. Brian D. Wassom
Warner Norcross & Judd
12900 Hall Road
Suite 200
Sterling Heights, MI 48313

    Re:  Case No. 25-1940, *Patrice Nelson, et al v. MillerKnoll, Inc., et al*
        Originating Case No. 1:23-cv-00464

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                Sincerely yours,

                s/Cathryn Lovely
                Opinions Deputy

cc: Ms. Ann E. Filkins

Enclosures

Mandate to issue

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PATRICE NELSON, as personal representative of the
Estate of Jaqueline Nelson; GEORGES MICO NELSON,
individually, and as personal representative of the
Estate of Jacqueline Nelson,

         *Plaintiffs-Appellants*,

    *v.*

MILLERKNOLL, INC., fka Herman Miller, Inc.

         *Defendant-Appellee*.

> No. 25-1940

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cv-00464—Robert J. Jonker, District Judge.

Argued:  June 3, 2026

Decided and Filed:  July 7, 2026

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Gaetan Gerville-Réache, WARNER, NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Appellants.  Mark L. Durbin, BARNES & THORNBURG LLP, Chicago, Illinois, for Appellee.  **ON BRIEF:**  Gaetan Gerville-Réache, Brian Wasson, WARNER, NORCROSS + JUDD LLP, Grand Rapids, Michigan, Donna Tobin, ROYER COOPER COHEN BRAUNFELD, New York, New York, Doris Rygalski, NORMAN, HANSON & DETROY, Portland, Maine, for Appellants.  Mark L. Durbin, Megan Krivoshey, BARNES & THORNBURG LLP, Chicago, Illinois, Anthony C. Sallah, BARNES & THORNBURG LLP, Grand Rapids, Michigan, for Appellee.

---

### OPINION

---

CLAY, Circuit Judge.  The son of furniture designer George Nelson and other Plaintiffs sued the furniture company MillerKnoll, Inc. alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), and state law.  Plaintiffs also brought several related state law tort claims against MillerKnoll.  The district court granted summary judgment to Defendants on all claims.  For the reasons explained below, we **AFFIRM** the judgment of the district court.

## I.  FACTUAL BACKGROUND

### A.  The Bubble Lamp

George Nelson was a renowned mid-century furniture designer who spent much of his career as the Design Director of the furniture company Herman Miller, Incorporated, now renamed MillerKnoll (referred to herein as "HMI").  While employed at HMI, Nelson designed one of his most famous pieces:  a geometric, cloth-covered hanging light fixture referred to as the "Bubble Lamp."

During his employment, Nelson never entered into a formal written agreement with HMI with respect to its ownership or use of Bubble Lamp-related intellectual property rights.  Instead, Nelson relied on a verbal agreement with the company under which he would be paid a royalty on "all designs submitted by [Nelson] to Howard Miller . . . for production and sale on an exclusive basis."  Ltr., R.233-32, PageID #3469.  In 1957, when Nelson no longer worked at HMI, the parties entered into a written agreement, under which HMI agreed "to provide Mr. Nelson royalties for furniture products and patterns designed by him."  2006 Royalty Agreement, R.220-2, PageID #2111.

Nelson never registered any trademarks relating to the Bubble Lamps with the United States Patent and Trademark Office ("USPTO").  However, as is explained in greater detail below, other parties did register USPTO trademarks relating to the Bubble Lamps following Nelson's death, which were later acquired by HMI.  This lawsuit concerns HMI's use and

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 3

ownership of three Bubble Lamp trademarks: two different configuration marks, which protect the design of the lamps, and the wordmark "BUBBLE LAMP" (referred to collectively as the "Bubble Lamp IP").

### B.  2006 Royalty Agreement

When Nelson died in 1986, any intellectual property rights that he owned passed to his widow, Jacqueline Nelson.  Jacqueline also did not register any Nelson-related or Bubble Lamp-related trademarks.  However, in 2006, Jacqueline entered into a royalty agreement with HMI, which "supersede[d] all previous agreements" between Nelson and HMI.  2006 Royalty Agreement, R.220-2, PageID #2111.  Under the 2006 Royalty Agreement, HMI agreed to pay "Mrs. Nelson the royalty rate . . . of 1.5% per unit sold" in exchange for certain rights to Nelson designed furniture products.  *Id.* at PageID #2112.  The dispute in this case centers around exactly what rights were granted to HMI in the 2006 Royalty Agreement:  Plaintiffs contend that the Agreement is merely a licensing agreement giving HMI only use rights in the IP; Defendants contend that the Agreement actually confers ownership of the IP on HMI.

The full details of the 2006 Royalty Agreement are discussed in greater detail below, but, in short, the Agreement establishes that HMI has rights with respect to certain products, which the Agreement defines as "all Nelson designed products, as to which HMI owns the right to George Nelson designs . . . ."  *Id.* at PageID #2111.  The Agreement also included an attached exhibit, which the parties agreed "constitute[d] a list of Nelson designed products which are owned, currently manufactured, and sold by HMI."  *Id.*  The 2006 Royalty Agreement did not cover the Bubble Lamp IP, but it did establish that the parties could, in the future, add additional products to be covered by the terms of the 2006 Royalty Agreement.

### C.  George Nelson Foundation

In 2010, HMI leadership formed the George Nelson Foundation ("GNF").  GNF's purported goal was to protect and promote the legacy of George Nelson's work, including by protecting his IP rights.  In February of 2013, Jacqueline Nelson assigned all of her George Nelson IP rights to GNF through an Intellectual Property Assignment Agreement ("IPAA").  Jacqueline agreed to "irrevocably" assign "all rights, title, and interest" she had "in and to all Intellectual Property" to GNF.  IPAA, R.220-4, PageID #2126.  The IPAA defined "Intellectual

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 4

Property" as "all furniture designs, lamp designs, clock designs . . . (including without limitation the . . . 'Bubble lamp')." *Id.* at #2125.  In exchange for the assignment of those rights, GNF agreed to pay Jacqueline all royalties that GNF would receive under any licensee arrangement with a third party. *Id.* at #2126.  The IPAA did not "supersede or contradict any licensing and/or commercial arrangements . . . but rather . . . provide[d] a mechanism by which to protect against infringement by others . . . ."—meaning that the 2006 Royalty Agreement remained intact. Email, R.233-18, PageID #3299.

Plaintiffs contend that HMI formed GNF "without Jacqueline Nelson's knowledge, without her approval, and without authorization to use the George Nelson name." Appellants Br. at 9.  However, the record demonstrates that Jacqueline was involved with and supportive of GNF's creation.  In July 2010, HMI CEO Brian Walker sent an official letter to Jacqueline seeking her support for GNF, informing her that GNF would be an "independent authority" for continued "authentication of all Nelson designs," that it would "help to protect the authenticity of George's work and guard against knock-offs," and that it would "serve[] to optimize the revenue potential for [the Nelson] estate by increasing sales of authorized Nelson designs." Ltr., R.233-18, PageID #3291.  In reply, Jacqueline stated: "it is with great pleasure that I add my support to the development of a George Nelson Foundation." Ltr., R.233-12, PageID #3268.  When the foundation was formed, Jacqueline was named an honorary board member.

### D.  Modernica Lawsuit

Meanwhile, in the 1990s, a furniture company called Modernica (not a party to this suit) began manufacturing and selling Nelson designed and branded Bubble Lamps—unbeknownst to HMI or the Nelson family. *See George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 640 (S.D.N.Y. 2014).  Jacqueline eventually became aware of that fact and, in 2010, alerted relevant contacts at HMI and GNF.  GNF engaged an attorney to investigate Modernica's use of the George Nelson IP.  He discovered that, in 2010, Modernica had registered the "NELSON" and "GEORGE NELSON" wordmarks with the USPTO.  In 2011, Modernica also obtained a trademark registration for the word mark "BUBBLE LAMPS," and two configuration marks for the trade dress of the Bubble Lamps.

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 5

In May 2013, GNF sued Modernica for trademark infringement in the Southern District of New York.  Complaint, *The George Nelson Foundation v. Modernica, Inc.*, No. 13-cv-3427 (S.D.N.Y. Sept. 29, 2015).  GNF also sought the cancellation of Modernica's USPTO-registered configuration marks based on fraudulent procurement.  *Id.* at 12-13.  Because HMI shared an interest with GNF in protecting the Nelson name for its own business, HMI offered to advance legal fees to GNF to cover the cost of its Modernica litigation.  According to GNF's attorney, there was an "understanding . . . of what [the] achievable goals would be" through litigation: although GNF hoped to cancel all Modernica registrations, the more realistic goal was cancelation of registrations "in the areas outside of lighting."[1]  Dorsey Dep. Tr., R.233-30, PageID #3482, 3485.

In September 2015, GNF and Modernica settled.  Modernica agreed to sell the Bubble Lamp IP to HMI and the "NELSON" and "GEORGE NELSON" marks to GNF.  The GNF board reviewed the settlement and unanimously agreed to its terms.  That same September, HMI purchased Modernica's entire Bubble Lamp business, including 100 percent "of the intellectual property of [Modernica] used" in its Bubble Lamp business.  Purchase Agreement, R.220-43, PageID #2400.  HMI thus came to own the registrations for the two Bubble Lamp configurations marks and the "BUBBLE LAMP" word mark, which comprises the Bubble Lamp IP at issue in this case.

According to Plaintiffs, "the mixed settlement structure—GNF receiving the NELSON marks while HMI took title to [the Bubble Lamp IP]—was opaque."  Appellants Br. at 16-17. Plaintiffs contend that they "expected GNF, as plaintiff and ostensible owner, to receive any rights resolved in the Modernica case, including the Bubble Lamp IP, and then license that IP to HMI."  *Id.* at 17.  According to Plaintiffs' theory of this case, this settlement and HMI's acquisition of the Bubble Lamp IP constituted one part of HMI's surreptitious "theft of [George Nelson's] intellectual property."  Mico Nelson Dep. Tr., R.233-33, PageID #3502.

---

[1]According to GNF's attorney's deposition testimony, GNF believed success in the lawsuit on the lamp issue was unlikely because of the law on the issue of "abandonment" of intellectual property.  Dorsey Dep. Tr., R.233-30, PageID #3483.

No. 25-1940              *Nelson, et al. v. MillerKnoll, Inc.*              Page 6

### E.  2015 Addendum to 2006 Royalty Agreement

In July 2015—shortly before the Modernica settlement—Mico Nelson, the son of George and Jacqueline Nelson who was acting under Jacqueline's power of attorney, entered into an addendum to the 2006 Royalty Agreement.  It expanded the 2006 Royalty Agreement to add, as new "Licensed Products," both "Nelson branded Lamp Products" and all "Nelson branded products not covered" by the original Agreement.  2015 Addendum, R.220-3, PageID #2120, 2122.  The Addendum came after Mico, through his attorney Robert Giordanella, sent several emails to HMI expressing the Nelson family's eagerness to finalize an agreement with respect to the Bubble Lamps.

The 2015 Addendum stated that "the parties acknowledge and agree that HMI shall have the sole and exclusive right to manufacture, or have manufactured, use, and sell, and to grant licenses to others to manufacture, have manufactured, use and sell Nelson branded lamp products throughout the world."   2015 Addendum, R.220-3, PageID #2121.  It also noted that the Addendum would become effective on "the date disclosed by HMI to Mrs. Nelson in writing as the date on which HMI acquires the intellectual property rights necessary for HMI to manufacture and sell" the Bubble Lamps.  *Id.* at PageID #2120.  HMI agreed to pay a royalty rate of 5%—instead of the original 1.5%—to the Nelsons for the additional products, including the lamps.

Giordanella initially expressed some hesitation about adding the Bubble Lamps to the 2006 Royalty Agreement.  In an email he sent to GNF's attorney, he noted that he was "troubled by the fact that the Bubble Lamp and all other Nelson branded products are being added to the existing Royalty Agreement rather than a separate agreement" because "[t]he Royalty Agreement is not so much a license as it is a means to compensat[e] Nelson for the rights owned by HM."  Email, R.233-42, PageID #3567.  He continued:  "[b]y adding the bubble lamp and other Nelson branded products to the definition of Licensed Products, aren't we saying that the foundation no longer owns the rights to those items?"  *Id.*

A few days later, Giordanella emailed Mico, explaining that "HM has worked out a deal to purchase from Modernica the rights to the bubble lamp as well as other lighting products. In

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 7

exchange for using the 'Nelson' name with those lighting products, they will pay the Nelson family a royalty of 5%. The lighting products will be added to the list of products currently covered by the royalty agreement."  Email, R.220-21, PageID #2311.  He added that "[b]ecause it is expending . . . a significant amount of money to purchase the rights to the bubble lamp and other lighting products from Modernica, HM will have the same broad rights with respect to the lighting products that it has with the other products covered by the Royalty [A]greement."  *Id.* Mico responded, thanking Giordanella "for the very clear email."  Email, R.220-31, PageID #2351.

About a month later, Mico (still acting under his power of attorney on Jacqueline's behalf) sent a signed copy of the Addendum to Giordanella.  Before Giordanella sent the signed Addendum to HMI, he sought HMI's confirmation that it had agreed to acquire Modernica's "rights in the Bubble [L]amp."  Email, R.220-22, PageID #2313.  HMI confirmed that it reached an agreement with Modernica to buy the IP rights.  When Giordanella sent the final signed copy of the 2015 Addendum to HMI, he reiterated the Nelsons' condition:  "The addendum is submitted on the condition that HMI closes on the transaction with Modernica for the purchase of the bubble lamp rights."  Email, R.220-23, PageID #2315.  As of his deposition on August 13, 2024, Mico had never refused to accept or offered to return a royalty payment.

### F.  IPAA *Nunc Pro Tunc*

In 2017, the Plaintiffs sued GNF, GNF's attorney for the Modernica suit, and Giordanella in Illinois state court.  Plaintiffs primarily challenged the IPAA which assigned all of Jacqueline's IP rights to GNF, arguing that she was incapacitated when she signed the IPAA, rendering it invalid.  They also brought malpractice claims against both attorneys, arguing that they failed to adequately advise the Nelson family of their rights in the Nelson IP and about the Modernica lawsuit and its consequences.

The parties settled their lawsuit in 2022, with GNF agreeing to undo the IPAA via the execution of a *Nunc Pro Tunc*.  This meant that GNF gave any rights it held in the Nelson IP— including the "NELSON" and "GEORGE NELSON" trademarks—to the Nelson family.  There was no specific mention of any rights related to the Bubble Lamp IP in the agreement.

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 8

## II.  PROCEDURAL BACKGROUND

On September 17, 2021, Plaintiffs—Mico Nelson, Mico's wife Patrice, and the Estate of George Nelson—filed this suit in the Southern District of New York.  They asserted six claims against HMI (aka MillerKnoll), GNF, and several GNF executives:[2]  fraud (Count I); conspiracy to commit fraud (Count II); Unjust Enrichment (Count III); trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a) (Count IV); common law trademark infringement and unfair competition (V); and cancellation of the Modernica/HMI design registrations pursuant to 15 U.S.C. §§ 1119, 1052(d) (Count VI).

On April 28, 2023, the district court in the Southern District of New York granted Defendants' motion to transfer this suit to the Western District of Michigan based on the forum selection clause in the IPAA.  It determined that, although the IPAA had been rescinded at the time of the filing of the motion to transfer, under both Michigan and federal law, the forum selection clause of the IPAA constituted a severable and thus enforceable component of the contract.  After transfer, the district court in the Western District of Michigan denied Defendants' motion to dismiss, finding that "Plaintiffs [had] stated *Twombly*-plausible claims and established at least a *prima facie* case of standing for the trademark claims."  Ord., R.110, PageID #265.

Following discovery, the district court granted summary judgment to Defendants on all counts.  In the court's view, "Plaintiffs' case hinge[d] on whether HMI is unlawfully using and possessing the Bubble Lamp IP because of fraud in procuring the Bubble Lamp IP from Modernica, Jacqueline Nelson, or both."  Ord., R.281, PageID #5014.  The court then determined that HMI's use of the Bubble Lamp IP was not unlawful because Plaintiffs authorized HMI's use and ownership of that IP in the 2015 Addendum to the 2006 Royalty Agreement and then also ratified HMI's conduct by accepting millions in royalty payments from HMI.

Plaintiffs appealed.

---

[2]GNF and the GNF executives were dismissed from the suit on July 6, 2022.

### III.  DISCUSSION

#### A.  Standard of Review

We review the district court's grant of a motion for summary judgment *de novo*. *Miller v. Admin. Off. of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). A party is entitled to summary judgment if, based on the record as a whole, there are no "genuine dispute[s] of material fact" that could lead a factfinder to find for the moving party's opponent. Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position" is "insufficient" to defeat the moving party's motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, we must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In doing so, the evidence is construed, and all reasonable inferences are drawn, in favor of the nonmoving party. *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 332 (6th Cir. 2008).

#### B.  Analysis

The basic theory of Plaintiffs' case is that, around 2005, HMI leadership noticed a resurgence in the popularity of mid-century modern furniture and saw an opportunity to profit. They thus began a protracted campaign to win control over the George Nelson IP, and in particular the Bubble Lamp IP, an especially iconic and lucrative component of Nelson's catalogue. To get that IP, HMI manipulated an elderly Jacqueline Nelson into signing the 2006 Royalty Agreement, created GNF to serve "as the vehicle to strip Jacqueline of her rights" to the Nelson IP, and then convinced Jacqueline to assign all of her IP rights to GNF via the IPAA. Appellant Br. at 10-11. The consummation of HMI's deception, according to Plaintiffs, occurred at the conclusion of the Modernica lawsuit, when HMI induced the GNF board to approve a settlement under which Modernica assigned the Bubble Lamp IP to HMI instead of to GNF. Plaintiffs claim that, at the time of the settlement, they thought the Bubble Lamp IP had been transferred to GNF, and learned only later that HMI was asserting ownership. Plaintiffs also

contend that the Estate of George Nelson (and thus Mico as the Estate's sole beneficiary) is the true common law owner of the Bubble Lamp IP.

We agree with the district court's decision to grant summary judgment to Defendants on all counts. Plaintiffs do not argue that either the 2006 Royalty Agreement or the 2015 Addendum is invalid, and under the terms of those Agreements, HMI is authorized to use and own the Bubble Lamp IP. Mico also ratified HMI's use and ownership of the IP by accepting royalty payments from HMI under the terms of the Agreements, including after he learned that HMI was asserting ownership of the Bubble Lamp IP. Plaintiffs may not sustain infringement or tort claims based on conduct that they authorized and ratified. Accordingly, Plaintiffs are entitled to summary judgment on those claims. Plaintiffs also ask us to cancel HMI's trademark registrations for the Bubble Lamp IP, but have presented no evidence actually supporting their cancellation claims. Accordingly, Defendants are also entitled to summary judgment on that count.

### 1. Authorization

Defendants are entitled to summary judgment on all counts because Plaintiffs authorized them to own the Bubble Lamp IP via the 2006 Royalty Agreement as amended by the 2015 Addendum (the "Agreements"). Plaintiffs agree that they "cannot sustain a claim against a defendant based on conduct [they] authorized . . . ." *See* Op MSJ, R.229, PageID #2648. Accordingly, this case turns largely on whether the 2006 Royalty Agreement and the 2015 Addendum authorized Defendants to use and own the Bubble Lamp IP. We hold that they do.

Because the 2006 Royalty Agreement establishes that it "shall be interpreted under the laws of the state of Michigan," 2006 Royalty Agreement, R.220-2, PageID #2116, we use Michigan state law regarding contract construction to interpret the Agreements, *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 437 (6th Cir. 2009). Under Michigan law, we must give effect to the plain meaning of unambiguous contract terms. *See Wozniak v John Hancock Mutual Life Ins. Co,* 288 Mich 612, 615 (1939). In this case, the plain terms of the 2006 Royalty Agreement and the 2015 Addendum, together, unambiguously authorize HMI to both own and use the Bubble Lamp IP.

The 2006 Royalty Agreement established that HMI had rights with respect to certain Nelson-designed products.  Section 3 ("Product Description") states that the products covered by the Agreement "include all Nelson designed products, as to which HMI owns the right to George Nelson designs for furniture products and patterns, including the products listed in Exhibit A." 2006 Royalty Agreement, R.220-2, PageID #2111.  This phraseology is inartful, but the meaning is clear: that HMI will pay Jacqueline royalties on products that: (1) are designed by George Nelson; *and* (2) HMI owns the rights to.  This means that the parties agreed that HMI owned the rights to the products included in the Agreement.  Section 3 further drives this point home by clarifying that "Exhibit A" to the Agreement "constitutes a list of Nelson designed products which are *owned*, currently manufactured, and sold by HMI." *Id.* (emphasis added).

Other sections of the Agreement confirm HMI's ownership of the product designs covered by the Agreement.  Section 10 ("Design Origination") states that "Mrs. Nelson covenants and warrants that no other person, firm, or corporation, *other than HMI* . . . has *any title or ownership interest* in the Licensed Products or in any United States disclosure document, patents, patent applications, and design registrations relating thereto."  *Id.* at PageID #2113 (emphasis added).  Section 12 ("Product Ownership and Licensees") even more forcefully states that "HMI shall have the exclusive right, *title*, and interest to all inventions and designs subject to this Agreement, and shall own all prototypes, models, specifications, drawings, and other materials pertaining to any product covered by this Agreement."  *Id.* at PageID #2114 (emphasis added).  These sections leave little doubt that the parties agreed that HMI had the exclusive rights to the designs covered by the 2006 Royalty Agreement.

The 2006 Royalty Agreement did not cover the Bubble Lamp designs or IP, but it did allow that the parties could add additional, new products to the terms of the Agreement.  The 2006 Royalty Agreement defined the products it covered as "Licensed Products," and specifically stated that "HMI agrees that in the event other Nelson designed products (to which HMI owns the rights) are manufactured and sold by HMI, HMI shall disclose such in its quarterly reports . . . and that such disclosure shall constitute an addition to Exhibit A."  2006 Royalty Agreement, R.220-2, PageID #2111-12.  The 2015 Addendum then added "Nelson branded Lamp Products" as a new "Licensed Product[]" covered by the 2006 Royalty

No. 25-1940                *Nelson, et al. v. MillerKnoll, Inc.*                Page 12

Agreement.   2015 Addendum, R.220-3, PageID #2122.   The addition of lamp products established that HMI had the same right to the Bubble Lamps as it did to the original products in the 2006 Royalty Agreement—an ownership right.

Plaintiffs say that the terms of the Agreements are sufficiently ambiguous to raise a jury issue as to whether they authorized HMI to own and use the Bubble Lamp IP, but their arguments fall flat.   We will begin with what is perhaps Plaintiffs' best argument: the fact that the Agreements use both the language of licensing and of ownership/assignment.   Plaintiffs are correct that the Agreements refer to the lamps and other covered products as "Licensed Products," which on its face would suggest a license to use IP, not an ownership interest. However, "Licensed Product" is a defined term in the contract, so we must "apply the definition[] . . . as set forth in the contract," and not defer to the ordinary meaning of those terms. *Henderson v. State Farm Fire & Cas. Co.*, 225 Mich. App. 703, 709 (1997).   The 2006 Royalty Agreement defines "Licensed Product" to mean "the products described in the Product Description" subsection, which, as is stated above, establishes that "Licensed Products" means products *owned* by HMI.   2006 Royalty Agreement, R.220-2, PageID #2111-12.   So, although odd, the contract language is clear that "Licensed Product" does not mean products licensed by HMI, but products owned by HMI.   The usage of the term "Licensed Product" thus does not create the ambiguity that Plaintiffs contend.

Next Plaintiffs contend that the term "lamp product" is ambiguous, creating a jury issue as to what the 2015 Addendum actually covers.   This argument fails for two reasons.   First, the term "lamp product" is not actually ambiguous:  it is more general than a specific reference to, say, a "Bubble Lamp product," but because the Bubble Lamps are a type of "lamp product[]," that term clearly encompasses the Bubble Lamps.   Second, even assuming the "lamp product" language was ambiguous, the extrinsic evidence clearly indicates that the parties meant for the term to cover the Bubble Lamps.   Mico expressly confirmed this understanding at his deposition, stating that he understood that the outcome of the Modernica litigation would be for HMI to

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 13

acquire "the rights to sell the bubble lamps."  Mico Nelson Dep. Tr., R.220-5, PageID #2177.[3]  Additionally, the 2015 Addendum was entered into on the heels of the Modernica ligation, which concerned the Bubble Lamp products.

Plaintiffs also argue that the term "Nelson branded lamp product" creates ambiguity between the 2015 Addendum and the 2006 Royalty Agreement because the latter only uses the term "Nelson designed."  Their position appears to be that "Nelson designed" and "Nelson branded" must refer to different things, creating some general ambiguity as to what products the 2015 Addendum was referring to.  This argument is also unavailing.  The 2006 Royalty Agreement establishes that it covers "Nelson designed products," and that the parties may later add other Nelson designed products to the Agreement.  This means that the products referred to as "Nelson branded" in the 2015 Agreement merely constitute a subcategory of the wider universe of "Nelson designed" products referred to in the 2006 Royalty Agreement, such that a Nelson branded product is necessarily *also* a Nelson designed product.  There is thus no question that the terms of the 2006 Royalty Agreement that govern Nelson designed products also apply to the Nelson branded lamp products described in the 2015 Addendum.

Further homing in on the term "Nelson branded," Plaintiffs argue that the 2015 Addendum refers only to products bearing the "NELSON" or "GEORGE NELSON" word marks, but does not reach the word mark "BUBBLE LAMP" or the Bubble Lamp configuration marks.  Plaintiffs' argument fails with respect to both the configuration mark and the "BUBBLE LAMP" word mark.  The 2006 Royalty Agreement clearly states that "HMI shall have the exclusive right, title, and interest to all inventions and *designs* subject to the Agreement."  2006 Royalty Agreement, R.220-2, PageID #2114 (emphasis added).  This means that HMI has the right to the *designs* of the Bubble Lamps.  Conferring ownership of the designs to HMI necessarily includes ownership of the configuration registrations for the Bubble Lamps, which protect the "nonfunctional" "shape of the product"—in other words, the design of the Bubble Lamps.  *See* 1 McCarthy on Trademarks and Unfair Competition § 7:94 (5th ed.); *see also id.*

---

[3]Although he also clarified that he understood "the rights to sell" to mean "the licensing rights, the manufacturing rights, the rights to use the bubble lamp," but not ownership.  Mico Nelson Dep. Tr., R.220-5, PageID #2177.

No. 25-1940                 *Nelson, et al. v. MillerKnoll, Inc.*                 Page 14

(describing the "*design* of a grille for a HUMMER vehicle" as an example of a product configuration trademark).  The 2015 Addendum itself also clearly understood the term "Nelson branded lamp products" to encompass design rights.  The Addendum, on its own terms, gives HMI the "*sole* and *exclusive* right to manufacture. . . use, and sell . . . Nelson branded lamp products throughout the world."  2015 Addendum, R.220-3, PageID #2121 (emphasis added).  It would not be possible for HMI to manufacture and sell Bubble Lamps without having the right to the design configurations, which encompass the visual appearance of the lamps.

The Agreements together also confer ownership of the "BUBBLE LAMP" word mark. Plaintiffs argue that the term "Nelson branded" encompasses only the word marks "NELSON" and "GEORGE NELSON."  Interpreting the Agreements in the light most favorable to Plaintiffs, as we must at summary judgment, we conclude that there is ambiguity around the scope of the "Nelson branded" term.  However, other provisions of the Agreements are clear.  When § 12 of the 2006 Royalty Agreement confers on HMI the "exclusive right, title, and interest to all inventions and designs subject to [the] Agreement," it also states that HMI "shall own all . . . other materials pertaining to any product covered by the Agreement."  2006 Royalty Agreement, R.220-2, PageID #2114.  The "BUBBLE LAMP" word mark necessarily "pertains to" the Bubble Lamps themselves, meaning that the Agreement also confers ownership over the word mark.  Section 11 confirms this interpretation, when it states that "HMI shall have the sole right at its sole discretion to bring actions to enforce any proprietary rights relating to the Licensed Products."  *Id.* at PageID #2114.  This naturally gives HMI the right to enforce the trademark infringement of the "BUBBLE LAMP" work mark because it is a property right relating to the Licensed Products.  Conferring on HMI the *sole* right to enforce proprietary rights necessarily indicates ownership of those rights, including the "BUBBLE LAMP" word mark.  Additionally, "a trade-mark right is [not] a right in gross or at large" and "[t]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed."  *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).  Considering the "appurtenant" nature of a trademark, it would make very little sense to separate ownership of the "BUBBLE LAMP" mark from ownership of the Bubble Lamp designs.

No. 25-1940              *Nelson, et al. v. MillerKnoll, Inc.*              Page 15

Finally, Plaintiffs argue that the Agreements cannot constitute authorization of HMI's use and ownership of the Bubble Lamp IP because at the time Mico signed the 2015 Addendum, he "believed HMI was negotiating a *license* with Modernica," and did not believe he was approving ownership. MSJ, R.229, PageID #2648 (emphasis in original). This argument is plainly foreclosed by Michigan law, which is clear that "the unilateral subjective intent of one party cannot control the terms of a contract." *Burkhardt v. Bailey*, 260 Mich. App. 636, 656 (2004). "It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Zurcher v. Herveat,* 238 Mich. App. 267, 299 (1999) (citation and internal quotation marks omitted). Because the "language of [the Agreements] is clear and unambiguous," our "interpretation is limited to the actual words used" therein, which authorize HMI's ownership of the Bubble Lamp IP. *Burkhardt*, 260 Mich. App. at 656.

In short, the Agreements unambiguously authorize HMI to manufacture and sell the Bubble Lamps, and to own and use the Bubble Lamp IP.

### a.  Infringement Claims

Having determined that the Agreements authorize HMI's use and ownership of the Bubble Lamp IP, we proceed to consider how this impacts each of Plaintiffs' claims, starting with their federal and state infringement claims. We hold that authorization defeats all of Plaintiffs' infringement claims.

Plaintiffs first allege "trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a)." SAC, R.64, PageID #687. Section 1125(a), also commonly referred to as "Lanham Act § 43(a)" or simply "§ 43(a)," creates liability for:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

> sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a)(1)(A).  Federal courts understand this subsection to create a Lanham Act cause of action for infringement of unregistered trademarks.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[Section] 43(a) protects qualifying unregistered trademarks and . . . the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)"); *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921 (6th Cir. 2003) ("Section 43(a) of the Lanham Act provides a federal cause of action for infringement of an unregistered trademark which affords such marks essentially the same protection as those that are registered."); 4 McCarthy on Trademarks and Unfair Competition § 27:9 (5th ed.) (describing the § 1125(a)(1)(A) prong as "infringement of even unregistered marks, names and trade dress.").

This Circuit does not appear to have directly addressed the issue of authorization or consent in the context of *unregistered* trademark infringement actions under § 1125(a).  However, in the context of registered trademark infringement claims under Lanham Act 15 U.S.C. § 1114(1), we have clearly recognized that "[t]he Lanham Act prohibits the use of a trademark . . .'without the consent of the registrant.'" *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 539 (6th Cir. 2024) (quoting 15 U.S.C. § 1114(1)) (discussing trademarks in the context of franchiser-franchisee relationship specifically).   This reading makes sense, considering that § 1114(1) explicitly states that infringement occurs when the infringer uses the mark "without . . . consent."

Section 1125(a) does not contain the same "without consent" language.  However, other courts to consider this issue have interpreted § 1125(a) to similarly require that plaintiffs show lack of consent or authorization to sustain an unregistered trademark infringement action.  In *Segal v. Geisha NYC LLC*, for example, the Seventh Circuit reasoned that unregistered trademark infringement requires a likelihood of confusion between the plaintiff's mark and the allegedly infringing mark, and that "where the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act."  517 F.3d 501, 506

(7th Cir. 2008); *see also Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) ("To establish a prima facie case under section 43(a), 'a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made *unauthorized* use of it 'such that consumers were likely to confuse the two.'" (emphasis added) (citation omitted)).

Guided by this reasoning, we hold that authorization to use a mark defeats an infringement claim under § 1125(a).  Courts generally treat § 1125(a) and § 1114(1)(a) as parallel statutes.  The Supreme Court described in *B & B Hardware, Inc. v. Hargis Industries, Inc.*, for instance, how the "Lanham Act. . . creates a federal cause of action for trademark infringement" under which "[t]he owner of a mark, *whether registered or not*, can bring suit in federal court if another is using a mark that too closely resembles the plaintiff's."  575 U.S. 138, 144 (2015) (emphasis added).  The Court then went on to cite § 1125(a)(1)(A) as creating the cause of action for unregistered marks, and § 1114(1)(a) as creating the cause of action for registered marks.  *See id.* at 144-45.  Other courts have opined that "[t]he principles of law underlying the validity and infringement of a mark . . . are largely the same whether or not the mark has been registered." *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 373 n.4 (5th Cir. 2024).  Because § 1125(a)(1)(A) and § 1114(1)(a) function to create corollary causes of action, to the extent authorization defeats an infringement claim under § 1114(1)(a), it should also do so under § 1125(a)(1)(A).  It would also defy common sense to allow a plaintiff to sue a defendant for using a trademark that the plaintiff told the defendant he could use.

Authorization also defeats Plaintiffs' state common law infringement claims.  Michigan courts recognize a cause of action for infringement of common law trademarks.  *See Janet Travis, Inc. v. Preka Holdings, L.L.C.*, 306 Mich. App. 266, 268 (2014).  To show that a common law trademark is being infringed, Michigan courts "require a plaintiff to show that (1) its mark was valid . . . (2) plaintiff had priority in the mark (i.e., had used it before defendant), (3) defendant's allegedly infringing mark was likely to confuse consumers as to the source of defendant's products or services, and (4) defendant used the allegedly infringing mark."  *Id.* at 268-69.  Neither party has fully briefed whether the "authorization" defense applies to state common law trademark infringement actions, but both parties appear to accept that it does.

*See, e.g.*, Op MSJ, R.229, PageID #2648 ("[I]t is true that a plaintiff cannot sustain a claim against a defendant based on conduct the plaintiff authorized").  And although Michigan caselaw does not definitively establish that authorization defeats an unregistered trademark infringement claim, Michigan law concerning common law trademarks appear to closely mirror federal law on the same issue.  Michigan law, like federal law, requires that the holder of a common law trademark show that there is a likelihood of confusion between his mark and the allegedly infringing mark.  *See Janet Travis*, 306 Mich. App. at 268.  In *Segal*, the Seventh Circuit determined that the authorization defense applied to unregistered trademark infringement actions because of the likelihood of confusion element, noting that "where the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no [infringement]." 517 F.3d at 506.  The same principle applies here, meaning that Plaintiffs' state common law infringement claim also fails because Plaintiffs authorized Defendants to use and own the Bubble Lamp IP.[4]

### b.  State Law Tort Claims

Plaintiffs also allege fraud, conspiracy to commit fraud, and unjust enrichment under state law.  All of Plaintiffs' tort claims center on HMI's alleged fraudulent "theft" of IP.  Authorization also defeats Plaintiffs' tort claims.  The Michigan Supreme Court has held that where a plaintiff consents to a defendant's "allegedly tortious act," claims based on those acts "fail as a matter of law."  *Smith v. Calvary Christian Church*, 462 Mich. 679, 686 (2000); *see also McMillian v. Nowicki*, 2005 WL 658860, at *2 (Mich. Ct. App. Mar. 22, 2005) ("A person who consents to another's conduct may not assert a claim in tort for that conduct's resultant harm.").

Although there do not appear to be authoritative Michigan cases discussing consent or authorization specifically in the intellectual property context, the principle that consent to certain actions via contract precludes tort liability based on those actions is well established.

---

[4]Additionally, "[i]n our adversarial system of adjudication," we trust the parties to "advanc[e] the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (citation omitted).  We, in turn, "decide only questions presented by the parties." *Id.* at 376 (citation omitted).  So even assuming that authorization does not defeat a common law trademark infringement claim under Michigan law, Defendants still prevail because Plaintiffs have presented no other arguments upon which to reverse the district court.

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 19

For example, in two cases, Michigan courts have found that, where a plaintiff signed a church's bylaws agreeing to acquiesce to and conform to the church's practices, he could not sue in tort for the same conduct he consented to in writing.  *See Calvary*, 462 Mich. at 688; *Hannewald v. Schwertfeger*, No. 295589, 2011 WL 711128, at *3 (Mich. Ct. App. Mar. 1, 2011).  These cases are closely analogous to the situation here, where Jacqueline's and Mico's assent to a contract indicates consent to its terms.

All of Plaintiffs' tort claims relate to HMI's alleged "theft" and unauthorized use of the Bubble Lamp IP, but, for all of the reasons explained above, the Agreements authorized HMI's use and ownership of the Bubble Lamp IP.  Accordingly, we hold that Defendants are entitled to summary judgment on the state law tort claims.

### 2. Ratification

The district court also found, as an alternative basis for granting summary judgment to Defendants, that Mico ratified HMI's use and ownership of the Bubble Lamp IP by accepting royalty payments per the terms of the Agreements.  The district court was correct.  "[A] party may not avoid an agreement on grounds of fraud if, after acquiring knowledge of the fraud, he affirms the contract by accepting a benefit under it."  *Bank of the Ozarks v. Perfect Health Skin & Body Ctr., PLLC*, 835 Fed. App'x 49, 57-58 (6th Cir. 2020) (internal quotation marks omitted) (holding that a party "may not avail itself of the benefits of that contract, and then attempt to escape its obligations thereunder by claiming the original contract was unenforceable").  In Michigan, it is established that even if an individual "is induced by fraud to enter into a contract," if he discovers the fraud "while the contract remains wholly executory" and "nevertheless executes it on his part, or requires performance on the part of the other party," he "waives the fraud and cannot subsequently maintain an action for damages therefor."  *Van Scherpe v. Ulberg*, 232 Mich. 699, 701 (1925); *see also Parkyn v. Ford*, 206 Mich. 576, 580 (1919) ("[W]here a party with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract and waive all right of action for the fraud, he cannot maintain an action for the original wrong practiced upon him. Where the affirmance of the contract is equivalent to a ratification, all right of action is gone.").

Although Mico accepted millions of dollars in royalty payments under the terms of the Agreements, and has never declined a royalty check, Plaintiffs contend that this does not constitute ratification because Mico did not have "an understanding of all the material facts necessary to an intelligent assent" because he did not realize that the Agreements approved HMI's ownership of the Bubble Lamp IP. *Hill v. Gen. Motors Acceptance Corp.*, 525 N.W.2d 905, 911 n.4 (Mich. Ct. App. 1994). That argument is foreclosed by the facts in the record. In his deposition, Mico stated: "I had learned in 2017 . . . that Herman Miller had ownership of the bubble lamp IP." Mico Dep. Tr., R.220-5, PageID #2179. Still, he continued to accept royalties long after 2017—this constitutes ratification.

Accordingly, Mico's ratification of HMI's use and ownership of the Bubble Lamp IP provides an alternative basis for affirming the district court's grant of summary judgment on both the infringement and state law claims.

### 3. Cancellation

Plaintiffs also seek to cancel what they allege were "fraudulently obtained and maintained Modernica design registrations" pursuant to 15 U.S.C. §§ 1119, 1052(d). "A request for cancellation under § 1119 must be supported by a showing that (1) the party 'has standing to petition for cancellation because it is likely to be damaged,' and (2) 'there are valid grounds for discontinuing registration.'" *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 593 (6th Cir. 2015) (quoting *Coach House Rest. v. Coach & Six Rests.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). As grounds for cancellation, Plaintiffs argue that Modernica committed fraud on the USPTO to procure its registrations for the Bubble Lamp IP. According to Plaintiffs, because Modernica's initial registration was invalid, Modernica's transfer of the Bubble Lamp IP rights to HMI after the 2013 lawsuit was also invalid. The party seeking cancellation of a trademark on the basis of fraud "must establish the following elements: 1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018). It must make this showing by clear and convincing evidence. *See id.* at 1020.

No. 25-1940                    *Nelson, et al. v. MillerKnoll, Inc.*                    Page 21

Defendants aptly point out that Plaintiffs have offered no real evidence showing that HMI or Modernica made fraudulent statements upon which the USPTO relied in issuing and maintaining the trademarks for the Bubble Lamp IP.  Plaintiffs offer very little argumentation or discussion as to this fraud issue in their brief on appeal, citing only a declaration signed by Modernica President Frank Novak that they claim contains misrepresentations.  On appeal, Plaintiffs do not explain what these alleged misrepresentations were, but in their response to Defendants' motion for summary judgment, Plaintiffs claimed that Novak lied to the USPTO "by implying that because Modernica used the specialized manufacturing process and equipment required to produce the Bubble Lamps, it was the owner of the Configuration Marks" and by claiming that "the enormous recognition and goodwill in the Bubble Lamp designs garnered for over fifty years by George Nelson and his Estate . . . was now owned by Modernica."  MSJ, R.41, PageID #2635, 2651-52.  At summary judgment, Plaintiffs also contended that a declaration submitted by another Modernica employee, Tim Lopez, to the USPTO contained false statements, but they do not even cite this declaration in their opening appellate brief.

Plaintiffs have not offered sufficient evidence to demonstrate that Novak's statements were false.  Plaintiffs' trademark expert, Richard Biagi, testified that he "[thought Novak] issued a false statement in connection with an acquired distinctiveness claim."  Biagi Dep., R.220-15, PageID #2270.  But Biagi never spoke to Novak, and he testified that his process for determining that Novak's statements were false was (1) reviewing the evidence in the record, (2) reviewing Novak's declaration, and (3) concluding that his statements were knowingly false.  *Id.*  "[E]xpert witnesses, though qualified in one area, may not testify beyond their specific expertise," and it is unclear how Biagi would be qualified to offer admissible expert testimony on Novak's state of mind and whether he *knowingly* lied.  *Hill v. Med. Device Bus. Servs., Inc.*, No. 24-5797, 2025 WL 1950300, at *5 (6th Cir. July 16, 2025).  Indeed, courts often look with skepticism on "expert opinion testimony on another individual's state of mind."  *Miles v. Bradley County*, 2025 WL 4051563, at *4 (E.D. Tenn. June 30, 2025).  And even assuming that Biagi's testimony is admissible, "conclusory assertions" of falsity "are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment."  *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 343 (6th Cir. 1993).  A jury would not be able to find, by clear and convincing evidence,

No. 25-1940                *Nelson, et al. v. MillerKnoll, Inc.*                Page 22

that Novak committed knowing fraud on the USPTO based only on Biagi's highly speculative opinion.

Accordingly, Defendants are entitled to summary judgment on the cancellation claims.

## IV.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment to Defendants.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-1940

PATRICE NELSON, as personal representative of the Estate
of Jaqueline Nelson; GEORGES MICO NELSON,
individually, and as personal representative of the Estate of
Jacqueline Nelson,

       Plaintiffs - Appellants,

    v.

MILLERKNOLL, INC., fka Herman Miller, Inc.

       Defendant - Appellee.

**FILED**
Jul 07, 2026
KELLY L. STEPHENS, Clerk

Before:  BOGGS, CLAY, and GILMAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk